**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CASE NO. _____** |
| | **:** | |
| **CLEVELAND GROVER** | **:** | |
| **MEREDITH, JR.** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(D), (f)(1)(E) and (f)(2)(A) of the federal bail statute. The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**Background**

The defendant has been charged by complaint in United States District Court for the District of Columbia with Interstate Communication of Threats, in violation of Title 18 U.S.C. § 875(c).  In addition, he is charged in District of Columbia Superior Court with 7 D.C. Code §§ 2502.01(a) and 2506.01(a)(3). No conditions or combination of conditions can ensure the community's safety and his return to this jurisdiction for future court proceedings. As such, he should remain held pending trial.

**A.    The defendant arrived on January 6, 2021, in Washington D.C. with an assault style rifle, a Glock firearm with high capacity magazines, and over 2,500 rounds of**

1

**ammunition.**

The defendant, a resident of Colorado, drove his truck and an attached trailer to Washington D.C, arriving in Washington, D.C. late on January 6, 2021.   At the time of his arrest on January 7, 2021, the defendant was in possession of two firearms; a Glock nine millimeter G19 and a Tavor X95 rifle equipped with a telescopic sight.   *See* Government Exhibit 1.   The defendant was also in possession of several high capacity magazines and approximately 2,500 rounds of ammunition of various caliber, including at least 320 rounds of "armor-piercing" 5.56 rounds.   *See* Government Exhibit 2.

<u>GOVT EX. 1</u>



<u>GOVT EX. 2</u>



**B.   Between January 4 and January 7, 2021, the defendant transmitted numerous communications to several individuals in which he threatened to commit violence in Washington, D.C.**

Prior to and after arriving in Washington, D.C., the defendant made numerous threatening communications.   These texts were recovered from the defendant's cell phone and were exchanged with several individuals.   In an interview conducted at the time of his arrest, the defendant admitted that he sent the texts contained on his cell phone.   Texts of particular concern include the following, ordered chronologically:

<u>January 4, 2021</u>

The defendant sent a text to which he attached a link to a media story titled, "D.C. Mayor Calls Out National Guard for Pro-Trump Stop the Steal Rallies; Urges People to Stay Away from City."   In the same text, the defendant states, "This is gunna b AWESOME [sic]."   Later the defendant sent a text stating, "We're gonna surround DC and slowly constrict."   Apparently under the impression that law enforcement was monitoring his communications, the defendant later sent a text stating, "I'm harmless . . . I won't fire until ordered SIR!"

<u>January 6, 2021</u>

While in route to Washington, D.C., the defendant received a text that stated, in part, "Trump supporters have violated several layers of security fending [sic] at the Capitol building in Washington, D.C., prompting clashes with riot police."   The defendant responded to this text, stating, "Burn DC to the FKG ground."   Shortly later, he received another text which stated, "It's on, people in the whitehouse."   Later the defendant sent a text that stated, "3.5 hours away from

3

FUN."

On the same date, the defendant received a text that stated, "Pence blew it."   The defendant responded to this text, stating, "War time."

Later the defendant received texts describing the incident that occurred at the Capitol.   The defendant responded to these texts, stating, "Ready to remove several craniums from shoulders." Shortly afterwards, the defendant sent a text that stated, "I'm so ready to FK SOME TRAITORS UP."

On the same date, the defendant sent a text that stated, "I'm gonna collect a shit ton of Traitors heads."   Later the defendant sent texts that stated, "Hauling ass, 3.5 hours from target practice," and, "It ain't just me, someone has to take the TRASH out, FK THESE MTHRFKRS."

January 7, 2021

After arriving in Washington, D.C., the defendant sent a text that stated, "I may wander over to the Mayor's office and put a 5.56 in her skull, FKG cunt."   He also wrote, "I hope you're reading this Mr. FBI agent, FK U."   Later that same day the defendant sent a text that stated, "Strategizing on best way to assault this city . . . do I go in fast on Sportbike or do I go in the back door on dirt bike . . . Staying one more day since I got here late, need to FK with these commies." Shortly later, the defendant received a text that stated, "Mayor is on tv.   Called yesterday domestic terrorism.   Stupid bitch."   In response, the defendant sent a text that stated, in part, "CUNT." Later the defendant sent a text stating, "Thinking about heading over to Pelosi CUNT's speech and putting a bullet in her noggin on Live TV."   The defendant also sent a text stating, "You get that one Mr. Marxist FBI Agent?   Go FK yourself."   The defendant later sent texts that stated, "I'm gonna run that CUNT Pelosi over while she chews on her gums," and "Dead Bitch Walking."

He then sent a text stating, "I predict that within the next 12 days, many in our country will die."

Later on the same date the defendant wrote, "I ain't goin to jail, the morgue maybe, not jail." He subsequently received a text, asking him, "What are you up to? Stirring the pot somewhere[?]." In response, the defendant sent a text that stated, "Maybe just a little . . . In hotel room chillin, may head to lobby in a bit, bunch of Patriots still here." Shortly later, the defendant sent a text that stated, "Calm before the STORM."

**C.   The defendant committed an assault in Washington, D.C. shortly after his arrival on January 7, 2021; the defendant is an habitual drug user with a history of mental illness.**

On January 7, 2021, the defendant assaulted a person in Washington, D.C. According to an affidavit submitted to the Superior Court of the District of Columbia in support a search warrant, the defendant exited his vehicle, head-butted the complainant, knocked him to the ground, and assaulted him on the ground. (D.C. Superior Court Affidavit, Exhibit 10, at 1.) The defendant then fled in his vehicle. (Exhibit 10 at 1.)

By his own admission, the defendant is a habitual user of marijuana and has a history mental illness.

**Procedural History and Applicable Authority**

At the initial appearance on April 7, 2021, the government orally moved for detention pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(D), (f)(1)(E) and (f)(2)(A) of the federal bail statute. The defendant did not object to the government's request for a detention hearing. The parties requested a detention hearing on April 13, 2019, and the Court set the detention hearing for that date.

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal

trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f).   The parties may proceed by way of proffer, and hearsay is permitted. Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996).   Moreover, the Government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."   United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery.   Smith, 79 F.3d at 1210; see also Williams, 798 F. Supp. at 36.

The government contends that the defendant is a danger to the community. The government must establish by clear and convincing evidence that a defendant is a danger to the community. United States v. Peralta, 849 F.2d 625, 626 (D.C. Cir. 1988).

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. See 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case causes the government to ask the Court to conclude that there is: (1) no condition or combination of conditions that would assure the safety of the community and (2) no information in the defendant's personal background and characteristics that would serve as a basis to rebut the presumption of dangerousness under 18 U.S.C. §§ 3142(f)(1)(D) and (f)(1)(E). A hold under 18 U.S.C. § 3142(f)(2)(A) is also appropriate for risk of flight, given the

defendant's lack of ties to the community.

## Nature and Circumstances of the Offenses Charged

The defendant is charged by complaint with interstate communication of threats.  The nature and circumstances of this charge are set forth fully above.   The first factor, the nature and circumstances of the offense charged, clearly weighs in favor of detention. Here, the defendant communicated numerous threats to commit acts of violence in Washington, D.C.   As set forth in the complaint, the defendant threatened, among other things, to kill the Speaker of the U.S. House of Representatives, Nancy Pelosi.   Evidence further shows that the defendant threatened to kill the Mayor of Washington.   At the time he made these threats, the defendant had the means to carry them out.   Specifically, he was in possession of two firearms, including one equipped with a telescopic sight, several high capacity magazines, and approximately 1,000 rounds of ammunition of various caliber, including "armor piercing" rounds.   Finally, after arriving in Washington, D.C., the defendant engaged in an act of violence by assaulting a pedestrian, unprovoked, and then fleeing in his vehicle.   Given these facts and circumstances, the defendant should remain detained.

## Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is strong.   The threats the defendant communicated by means of text are set forth in black and white and are clearly "true threats" for purposes of 18 U.S.C. § 875(c).   See Virginia v. Black, 538 U.S. 343, 359 (2003("true threat" includes "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.").

These threats were found on the defendant's cell phone, and they were transmitted interstate. When interviewed, the defendant admitted that he transmitted the threats.   The defendant drove across the United States, from Colorado to Washington, D.C., to put himself in a position to carry out these threats.   The defendant went through a lot of trouble to put himself in a position to carry out his threats, and had the means at his disposal to do so.   The weight of the evidence against the defendant is strong.

### The Defendant's History and Characteristics

The third factor, the history and characteristics of the person, also weighs heavily in favor of detention. The defendant is a habitual drug user.   He also has a history of mental illness and evinces a strong antipathy towards law enforcement and leaders of this city and nation. And all of this was in full display when he arrived in the city to commit abhorrent acts of violence *one day after* the siege on the Capitol.   He also lacks ties to the community and appears to have no regard for governmental functions.   Especially given his mental health conditions and drug abuse, there are no conditions or set of conditions that would ensure community safety and his return to court in this jurisdiction.

### Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs overwhelmingly in favor of detention. Over the course of three days, the defendant made numerous threatening communications, threatening to murder specific high public officials and "traitors" more generally.   He threatened other acts of violence, including "surrounding" and "constricting" Washington, D.C.   His texts also reflect that he "strategized" how best to "assault" Washington, D.C. as well as his desire to "burn DC to the

FKG ground." His threats were graphic—he threatened to shoot a public official on live television, to put a bullet in her head. His threats were vulgar and misogynistic. What is more, the defendant clearly took great pleasure in envisioning violence, which he described as "fun" and "target practice."

A clearly disturbed, deranged, and dangerous individual that fantasizes about committing horrific acts of violence and takes countless steps to carry them out by driving across several states with a trailer stocked with thousands of rounds of ammunition and multiple firearms—including an assault style rifle—should not remain in the community. Pre-trial detention is thus necessary to ensure that the residents and leaders of this community—and any other across the country that is comprised of people against whom the defendant harbors extreme political and racial animus—remain protected.

## Conclusion

WHEREFORE, the Government requests that the Court order the defendant to be detained without bond pending resolution of this case.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

By: _____

AHMED BASET
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
Public Corruption & Civil Rights Section
555 4th Street, N.W., Room 5503
Washington, D.C. 20530
(202) 252-7097

9

Ahmed.Baset@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via email on January 13, 2021.

_____
AHMED BASET
Assistant United States Attorney