UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>V.<br><br>**CLEVELAND MEREDITH,**<br><br>**Defendant.** | **Case No. 21-mj-017-GMH** |

### MEMORANDUM IN SUPPORT OF RELEASE

Cleveland Meredith, through undersigned counsel, respectfully files this brief in support of his release on bail, subject to conditions as the Court deems appropriate.

**Legal Standard**

The Supreme Court has made clear that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States. v. Salerno*, 481 U.S. 739, 755 (1987). That is why "[t]here can be no doubt that this Act *clearly favors nondetention*." *United States. v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) (emphasis added). Instead, the Bail Reform Act requires the Court to impose the "least restrictive" means of ensuring the appearance of the person and safety to the community. 18 U.S.C. § 3142(c)(1)(B). Only in "*rare* circumstances should release be denied," and any "doubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Gebro*, 948 F.2d 118, 1121 (9th Cir. 1991) (emphasis added); *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("The default position of the law, therefore, is that a defendant should be released pending trial.").

When Congress passed the Bail Reform Act, it was looking to detain fewer people pretrial, not more. Congress knew that federal charges are serious, that mandatory minimums

1

are frequently asserted, and that sentencing exposure is enormous for most individuals accused in the federal system—yet, it still crafted a law acknowledging that detention is *only* appropriate for that "*small but identifiable group of particularly dangerous defendants* as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, *reprinted in* U.S. Code Cong. & Ad. News 3189, 1983 WL 25404, at *3189 (emphasis added).

To further this goal, Congress restricted the government's ability to request detention. Specifically, the BRA provides that the government may request a bail hearing only if certain conditions in § 3142 are present—*e.g.*, the defendant is charged with a crime of violence, faces a life sentence, death, or a drug offense with a 10-year or greater penalty, or poses a "serious risk" that he will "flee" or "obstruct justice." *See* 18 U.S.C. § 3142(f)(1)–(2).

If none of the conditions are met, then "a pretrial detention hearing **may not be held**, and the defendant must be released pending trial under the conditions set forth in § 3142(a)." *United States v. Tadlock*, 399 F. Supp. 2d 747, 750 (S.D. Miss. 2005) (citing *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992); *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Absent of these circumstances, detention is not an option."); *United States v. Ploof*, 851 F.2d 7, 9–10 (1st Cir. 1988) ("3142(f) does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such a hearing to the [six circumstances listed in § 3242(f)]").

Importantly, the Bail Reform Act does not permit the government to request a bail hearing on dangerousness alone—and courts may not detain defendants on dangerousness alone. *United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003) ("We are not persuaded that the Bail

Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness. This interpretation of the Act would render meaningless 18 U.S.C. § 3142(f)(1) and (2). Our interpretation is in accord with our sister circuits who have ruled on this issue."). Indeed, the Government must first establish one of the grounds in § 3142(f) "***as a prerequisite*** to the court considering the factor of danger . . . ." Office of the United States Attorneys, *Criminal Resource Manual: Release and Detention Pending Judicial Proceedings*;[1] *see also Ploof*, 851 F.2d at 11 ("We believe, however, the structure of the statute and its legislative history make it clear that Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists.") (citations omitted).

---

[1] Available at https://www.justice.gov/usam/criminal-resource-manual-26-release-and-detention-pending-judicial-proceedings-18-usc-3141-et (last visited Jan. 13, 2021).

**Argument**

In this case, the government does not—and cannot—satisfy any of the conditions set forth in § 3142(f).  Mr. Meredith is charged by criminal complaint with three counts: 1) transmitting a threat in interstate commerce, in violation of 18 U.S.C. § 875(c); 2) misdemeanor possession of an unregistered firearm, in violation of 7 D.C. Code § 2502.01(a); and 3) misdemeanor possession of ammunition, in violation of 7 D.C. Code § 2506.01(a).  For reasons discussed below, none of these charges satisfy § 3142(f).  As a result, Mr. Meredith must be released pending trial under the conditions set forth in § 3142(a).

### A. § 3142(f)(1)(A) is inapplicable because the alleged § 875(c) violation is not a "crime of violence."

While § 3142(f)(1)(A) permits the government to request detention in a case that involves a "crime of violence," Mr. Meredith is not charged with a crime of violence.  A "crime of violence," means—

(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another **[known as the "elements clause"]**; or

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense **[known as the "residual clause"].**

18 U.S.C. 3156(a)(4)(A).

When interpreting similarly worded statutes defining a "crime of violence," the Supreme Court has repeatedly held that the residual clause is unconstitutionally vague. *See, e.g.*, *United States v. Davis*, 139 S. Ct. 2319 (2019) (invalidating the residual clause in 18 U.S.C. § 924(c)). Accordingly, the residual clause cannot be relied on to determine whether the alleged § 875(c) violation qualifies as a "crime of violence."  The only question, then, is whether § 875(c) "has as

4

an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another?" It does not.

Section 875(c) provides "Whoever transmits in interstate or foreign commerce any communication containing any ***threat to kidnap any person*** or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." *Id.* (emphasis added).

The government has already conceded in other cases in this district that the substantive offense of kidnapping does not qualify as a crime of violence. *See United States v. Lassiter*, No. 08-cr-376, ECF No. 198-200 (D.D.C. Sept. 6, 2019) (jointly requesting to vacate three separate defendants' § 924(c) convictions predicated upon kidnapping, in violation of 18 U.S.C. § 1201(a)). It did so because it recognized that kidnapping can be accomplished through non-physical means, such as by "inveigling" or "decoying." *See* § 1201(a); *see also Jenkins*, 849 F.3d at 393 ("The government does not argue that the first element—unlawfully seizing, confining, inveigling, decoying, kidnapping, abducting, or carrying away—requires the use of force[.]"). In other words, because kidnapping can be accomplished by deception instead of by physical force, it fails to qualify as a crime of violence. *See Jenkins*, 849 F.3d at 393 ("Our sister circuits have held that the similar crimes of false imprisonment and kidnapping by deception do not have physical force as an element." (*quoting United States v. Swanson*, 55 Fed. Appx. 761, 762 (7th Cir. 2003*); Delgado-Hernandez v. Holder*, 697 F.3d 1125, 1127 (9th Cir. 2012) (noting that "[t]he federal kidnapping statute has no force requirement"). It is thus clear, and conceded by the government, that kidnapping is not a crime of violence.

Although there is not as much case law regarding whether a *threat to* kidnap qualifies as a crime of violence, it too can be committed without any threat to use physical force. *See cf.*

5

*United States v. Smith*, 831 F.3d 793 (7th Cir. 2016) (upholding conviction under § 1201(a) of defendant who "quietly lifted [her half-sister's newborn] from his bassinette, placed him in the back of her car, and took off for Colorado.").

While the *Santoro* case found that § 875(c) is a crime of violence, it is unpersuasive because it did not consider whether a threat to kidnap qualified an offense as a crime of violence; rather, without any real analysis, it simply concluded that the statute was "divisible," and then only considered whether a threat to injure qualified. *See United States v. Santoro*, 359 F. Supp. 3d 122, 127 n.11 (D. Me. 2019). That was the incorrect analysis.

In *Mathis v. United States*, 136 S. Ct. 2243 (2016), the Supreme Court recognized a hierarchy of three methods for determining the divisibility of a statute, in declining order of persuasiveness: First, look to court decisions to see if they have held that a particular statute lists various means of committing an offense, such that a jury need not agree unanimously on the issue. *Id.* at 2256. Second, look to the statutory language to determine if "statutory alternatives carry different punishments"—if they do, then they must be elements, making the statute divisible. *See id.* Third, as a means of last resort, "in the absence of 'clear answers' from case law and other sources," *United States v. Diaz*, 865 F.3d at 117 (4th Cir. 2017), "peek at the record documents [] for the sole and limited purpose of determining whether the listed items are elements of the offense." *Mathis*, 136 S. Ct. at 2256-57 (cleaned up). In determining divisibility, grammatical construction, punctuation, and lay-out are irrelevant. *See id.* ("itemized construction" does not determine divisibility). Ultimately, if there is any ambiguity in the statute, it must be resolved in favor of indivisibility. *Id.* at 2257. Divisible statute are the exception, not the rule. *See, e.g., Decamps*, 133 S. Ct. at 2283 (statutes divisible in "narrow

6

range of cases"); *United States v. Sheffield*, 832 F. 3d 296, 314 (D.C. Cir. 2016) (statutes are divisible in "rare instances").

*Santoro* failed to perform any steps of this analysis, which shows that § 875(c) is not, in fact, divisible.  First, federal jury instructions list "threats to kidnap" and "threats to injure" as separate means—not elements—which the jury does not need to unanimously agree upon.  *See* 2 Modern Federal Jury Instructions, ¶ 31.02—Threats Transmitted by Interstate Communication (18 U.S.C. § 875(c)) (stating that the government must establish "[f]irst, that the defendant threatened to kidnap or to injure [name of victim], as charged in the indictment").  Second, the statutory language shows that § 875 creates four separate offenses that carry different punishments: § 875(a) carries a 20-year-maximum penalty; § 875(b) carries a 20-year-maximum penalty; § 875(c) carries a 5-year-maximum penalty; and § 875(d) carries a 2-year-maximum penalty.  However, § 875(c) does *not* contain separate penalties within its particular subdivision—whether one commits it by threats to kidnap or injure, the maximum penalty is still 5 years.  The analysis need go no further to conclude that § 875(c) is indivisible.

Because § 875(c) is indivisible, the Court must "presume[] that the [charge] 'rested upon nothing more than the least of the acts' criminalized. *Moncrieffe*, 569 U.S. at 190-91 (quoting *Johnson*, 599 U.S. at 137 (cleaned up)); *see also United States v. Chapman*, 666 F.3d 220, 227 (4th Cir. 2012) ("when a defendant pleads guilty to a formal charge in an indictment which alleges conjunctively the disjunctive components of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct.").  In other words, this Court must presume that the charge entails the least serious conduct—i.e., threats to kidnap—and for the reasons discussed above, a threat to kidnap categorically cannot qualify as a crime of

violence.  Because of this, § 875(c) categorically cannot qualify as a crime of violence.  Therefore, this case is ineligible for detention based on § 3142(f)(1)(A).

### B.  § 3142(f)(1)(D) is inapplicable because Mr. Meredith has no prior convictions.

The government claims that this case is eligible for detention based on § 3142(f)(1)(D), which permits it to request detention in cases involving "any felony *if such person has been convicted of two or more offenses*" involving a crime of violence, life or death sentence, or a drug offense with a 10-year or greater penalty.  The government is mistaken, however.  This provision cannot justify detention here because Mr. Meredith has *no* prior convictions.  Furthermore, because Mr. Meredith has no priors, there is no presumption of detention in this case under § 3142(e), contrary to the government's assertion. See Gov't Mem., ECF No. 4 at 6.

### C.  § 3142(f)(1)(E) is inapplicable because the alleged D.C. Code offenses are misdemeanor offenses.

The government also claims that this case is eligible for detention based on § 3142(f)(1)(E), which permits the government to request detention in cases involving a "*felony* that is not otherwise a crime of violence that involves . . . the possession or use of a firearm or destructive device." *Id.* (emphasis added).  However, this provision cannot justify detention either, as Mr. Meredith's charges involving a firearm and ammunition do not involve felonies— they involve misdemeanors.

### D.  The government cannot meet its burden of proving that Mr. Meredith poses a *serious* flight risk under § 3142(f)(2)(A) for a simple reason: he does not.

Finally, the government seeks detention under § 3142(f)(2)(A) "for risk of flight, given defendant's lack of ties to the community."  Gov't Mem., ECF No. 4 at 6.  Under § 3142(f)(2)(A), ordinary risk of flight is not a permissible basis for detention; rather, the statute only authorizes detention if there is a "*serious risk*" that Mr. Meredith will flee. § 3142(f)(2)(A)

8

(emphasis added). And the government bears the burden of presenting some *evidence* to substantiate its allegation that a defendant poses a serious flight risk, a burden the government has not—and cannot—meet. *See United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) (A defendant "may be detained *only if the record supports* a finding that he presents a serious flight risk." (emphasis added)). Although the defense bears no burden of proof, it is clear from Mr. Meredith's history and characteristics that he does not pose a serious risk of flight. He has no prior convictions. He has no history of non-compliance. And there is no indication that he has ever sought to flee from any court proceeding. *See United States v. Cruz*, 363 F. Supp. 2d 40, 47 (D.P.R. 2005) (denying the Government's motion to detain a person who frequently traveled internationally, had two passports and other fraudulent documents in his possession, and faced an advisory sentence of 33-41 months imprisonment where the "vast majority of [his] family, economic and social ties are in this jurisdiction" and "the government has presented no concrete evidence to the effect that defendant was fleeing the jurisdiction, or was taking affirmative steps to do so. . . .").

The BRA's legislative history makes clear that detention based on serious flight risk is only appropriate under "extreme and unusual circumstances."[2] For example, the case relied on

---

[2] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances* . . . justifies pretrial detention"—as representing the "current case law"); *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

in the legislative history as extreme and unusual enough to justify detention on the grounds of serious risk of flight involved a defendant who was a fugitive and serial impersonator, had failed to appear in the past, and had recently transferred over a million dollars to Bermuda. *See Abrahams*, 575 F.2d at 4. The government can come nowhere close to demonstrating that Mr. Meredith's risk of flight rises to a similar extreme or unusual level. In addition, a defendant should not be detained as a "serious risk" of flight when the risk of non-appearance can be mitigated by conditions of release. The only defendants who qualify for detention under § 3142(f)(2) are those who are "[t]rue flight risks"—defendants the government can prove are likely to flee the jurisdiction with the intention of thwarting the judicial process. *See, e.g.*, Lauryn Gouldyn, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 724 (2017).

There is no other basis to detain Mr. Meredith in this case. Because there is no basis to detain Mr. Meredith under § 3142(f), he should be released immediately under whatever conditions the Court deems appropriate.

                                               Respectfully submitted,

                                               A.J. KRAMER
                                               Federal Public Defender

                                               _____/s/_____
                                               UBONG E. AKPAN
                                               Assistant Federal Public Defender
                                               Federal Public Defender's Office
                                               625 Indiana Ave NW, Suite 550
                                               Washington, D.C. 20004
                                               (202) 208-7500