UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 1:21-cr-00159 (ABJ) |
| ) | |
| CLEVELAND GROVER ) | |
| MEREDITH, JR. ) | |
| ) | |
| Defendant ) | |
| _____) | |

**DEFENDANT'S MOTION TO REVOKE
MAGISTRATE JUDGE'S ORDER OF DETENTION
PENDING TRIAL AND TO SET NEW CONDITIONS OF RELEASE**

Defendant Cleveland Grover Meredith, Jr., by and through undersigned counsel, hereby moves the Court, pursuant to 18 U.S.C. § 3142(b), LCrR 47 and LCrR 46.1(b), to revoke the Magistrate Judge's Order of January 14, 2021 (Docket No. 10), ordering the pretrial detention of Defendant, and to set such conditions of release as will ensure the appearance of Defendant at future proceedings and the safety of any other person and the community. In support of this Motion, Defendant states as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES
RELEVANT FACTS AND PROCEDURAL HISTORY**

On January 7, 2021, Defendant was arrested by FBI agents at the hotel room where he was staying in the District and taken into custody. Per the Government, Defendant arrived by truck and trailer in the District late on January 6, 2021 (after the riots at the Capitol that day) with firearms and ammunition and "transmitted numerous threatening communications to several individuals" in relation to Speaker of the House Nancy Pelosi. Government's Memorandum in Support of Pretrial Detention at 1-5. Docket No. 4. The firearms and ammunition were later seized from Defendant's trailer. The Government has not presented any evidence or information

indicating, *inter alia*, that Defendant made any "threatening communications" directly to Speaker Pelosi or posted any such communications online; took any actions while in the District to actually follow up on such allegedly "threatening communications"; ever removed the firearms or ammunition from the trailer; or ever participated in any post-January 6, 2021 riot-related activities. Indeed, per information presented at the detention hearing, Defendant was resting in his hotel room when arrested.

On January 8, 2021, Defendant was charged by criminal complaint with violations of 18 U.S.C. § 875(c) (Interstate Communication of Threats); D.C. Code § 7-2502.01(a) (Possession of Unregistered Firearm); and D.C. Code § 7-2506.01(a)(3) (Possession of Unregistered Ammunition). Ubong Apkan, Esq. of the Federal Public Defender of the District of Columbia was appointed to represent Defendant.

On January 8, 2021, Magistrate Judge Harvey presided over a Telephonic Initial Appearance in which the Government moved orally for temporary detention pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(D), (f)(1)(E) and (f)(2)(A). Magistrate Judge Harvey granted the motion for temporary detention (3-day hold), and the matter was later set for a detention hearing on January 14, 2021. Minute Entries for January 13, 2021.

On January 13, 201, the Government and defense each filed briefs on the issue of pretrial detention. Docket Nos. 4 & 5.

On January 14, 2021, a hearing was held before Magistrate Judge Harvey to address Defendant's conditions of release pursuant to 18 USC § 3142(b). A redacted transcript of the hearing is attached as Exhibit 1. At the hearing, the Government argued, *inter alia*, that Defendant had acted "under the spell of the QAnon extremist ideological conspiracy movement" and, as such, was "someone who is volatile and someone who we cannot expect to follow any

conditions of release that are issued by the court." Exhibit 1 at 23.  The defense countered, *inter alia*, that 18 U.S.C. § 875(c) is not a crime of violence that is eligible for detention per 18 U.S.C. § 3142(f)(2)(A), *id.* at 4; that Defendant had made clear in other text messages that the allegedly threatening communications were not meant to be taken seriously – "LOL.  I'm just having fun", *id.* at 25; that Defendant had previously participated peacefully in a rally at the Capitol in November 2020 without incident, *id.* at 26; and that, as the Government had acknowledged, Defendant is 53 years old and has no prior criminal record, *id.* at 28-30.  Magistrate Judge Harvey found that the alleged "communicated threat made criminal under Section 875 is a crime of violence, making the charge sanction eligible under 3142(f)(1)(A)", *id.* at 10, and rejected defense arguments that a combination of conditions of release under 18 USC § 3142(c), such as GPS monitoring and refraining from illicit drug use, could be fashioned to ensure Defendants' appearance at future proceedings and the safety of other persons and the community, *id.* at 33. Magistrate Judge Harvey ordered that Defendant be detained pending trial, Order of Detention Pending Trial, Docket No. 10, and a preliminary hearing was set for January 28, 2021, Docket No. 10.

On January 25, 2021, the parties filed a consent motion to continue the preliminary hearing for a date after February 28, 2021, Docket No. 11, which motion was granted, Docket No. 12.

On February 4, 2021, Defendant was found not eligible for court appointed counsel and an ascertainment of counsel date of February 22, 2021 was set.  Docket No. 14.

On February 11, 2021, undersigned counsel of Kiyonaga & Soltis, P.C. entered his appearance as counsel for Defendant, substituting for Ms. Apkan.  Docket No. 15.

On February 17, 2021, AUSA Anthony Franks entered his appearance as substitute

counsel for the Government.  Docket No. 16.

On February 22, 2021, the Court held the ascertainment of counsel/status hearing.  The parties moved orally to move the date of the preliminary hearing to March 22, 2021 to allow time for discovery to be provided to undersigned counsel.  The Court and parties discussed the possibility of having an arraignment in lieu of a preliminary hearing on March 22, 2021 if the Government secured an Indictment in the meantime.

On February 26, 2021, an Indictment was filed, charging Defendant with violations of 18 U.S.C. § 875(c) (Interstate Communication of Threats); D.C. Code § 7-2502.01(a) (Possession of Unregistered Firearm); D.C. Code § 7-2506.01(a)(3) (Possession of Unregistered Ammunition); and D.C. Code § 7-2506.01(b) (Possession of Large Capacity Ammunition Feeding Devices).  Docket No. 17.

Defendant has been detained since January 7, 2021, a total of 66 days.  Defendant has not yet been arraigned on the charges in the Indictment.

## ARGUMENT

The Supreme Court has made clear that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  United States. v. Salerno, 481 U.S. 739, 755 (1987); United States v. Gloster, 969 F. Supp. 92, 96-97 (D.D.C. 1997).  That is why "[t]here can be no doubt that this [Bail Reform] Act clearly favors nondetention."  United States. v. Byrd, 969 F.2d 106, 109 (5th Cir. 1992).  Indeed, the Bail Reform Act requires the Court to impose the "least restrictive" means of ensuring the appearance of the person and safety to the community. 18 U.S.C. § 3142(c)(1)(B). Only in "rare circumstances should release be denied," and any "doubts regarding the propriety of release should be resolved in the defendant's favor."  United States v. Gebro, 948 F.2d 118, 1121 (9th

Cir. 1991); United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010) ("The default position of the law, therefore, is that a defendant should be released pending trial.").

As such, the Bail Reform Act provides that the Government may request a bail hearing only if certain conditions set forth in 18 U.S.C. § 3142(f) are present, *e.g.*, the defendant is charged with a crime of violence; faces a life sentence or a drug offense with a 10-year or greater penalty; or poses a "serious risk" that he will "flee" or "obstruct justice." See 18 U.S.C. § 3142(f)(1)-(2). If none of these conditions is met, "the defendant must be released pending trial under the conditions set forth in § 3142(a)." United States v. Tadlock, 399 F. Supp. 2d 747, 750 (S.D. Miss. 2005) (*citing* United States v. Byrd, 969 F.2d 106, 109 (5th Cir. 1992)); United States v. Singleton, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Absent of these circumstances, detention is not an option."); United States v. Ploof, 851 F.2d 7, 9–10 (1st Cir. 1988) ("3142(f) does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such a hearing to the [six circumstances listed in § 3242(f)]"). Significantly, the Bail Reform Act does not permit courts to detain defendants on the basis of alleged dangerousness alone. United States v. Twine, 344 F.3d 987, 987 (9th Cir. 2003) ("We are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness – the Government must first establish one of the grounds in § 3142(f) "as a prerequisite to the court considering the factor of danger . . . ."); Office of the United States Attorneys, Criminal Resource Manual: Release and Detention Pending Judicial Proceedings.

When the Government moves for pretrial detention based on an alleged crime of violence, the first question is thus whether under 18 U.S.C. § 3142(f) the crime at issue constitutes a "crime of violence." 18 U.S.C. § 3142(f)(1)(A). Prior counsel argued at the

detention hearing that 18 U.S.C. § 875(c) (Interstate Communication of Threats) is not a crime of violence under 18 U.S.C. § 3142(f)(1)(A), Exhibit 1 at 3-4, Defendant's Motion for Release from Custody, Docket No. 5, which arguments are incorporated in full herein.

If the Court determines that the crime at issue constitutes a crime of violence under 18 U.S.C. § 3142(f)(1)(A), the Court must hold a hearing to determine whether any condition or combination of conditions set forth in 18 U.S.C. § 3142(c) "will reasonably assure the appearance" of the defendant and "the safety of any other person and the community." 18 U.S.C. § 3142(f)(1)(A).  The Court, in making these determinations, must take into account "the available information" concerning four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, community ties, criminal history and failures to appear at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g); United States v. Floyd, 11 F. Supp. 2d 39 (D.D.C. 1998).  The Court "must be persuaded by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of a person or the community." United States v. Calabrese, 436 F. Supp. 2d 925, 926 (N.D. Ill. 2006).  Per 18 U.S.C. § 3145(b), this Court retains the authority to review a Magistrate Judge's order detaining a defendant.

As to the first factor – the nature of the offense – the evidence proffered at the detention hearing, while referencing violent-sounding rhetoric, did not reveal that such allegedly threatening communications were intended to be taken seriously.  Indeed, as explained *supra*, no evidence was presented that suggested that Defendant made any "threatening communications" directly to Speaker Pelosi or posted them online; took any actions while in

the District to actually follow up on such allegedly "threatening communications"; ever removed the firearms or ammunition from the trailer; or ever participated in any post-January 6, 2021 riot-related activities. Indeed, Defendant confirmed in contemporaneous text messages that the allegedly threatening communications were not meant to be taken seriously – "LOL. I'm just having fun". Exhibit 1 at 25.

As to the second factor – the weight of the evidence – the Government contended at the detention hearing that the "texts speak for themselves," Exhibit 1 at 22, but there was no evidence presented at the detention hearing that suggested that Defendant intended to issue a threat or had the purpose of issuing a threat. The Supreme Court, in interpreting the elements of the crime of Interstate Threats under 18 U.S.C. § 875(c), has held that negligence is not sufficient as the mental state for this offense. <u>Elonis v. United States</u>, 575 U.S. 723 (2015). Rather, the Government must prove beyond a reasonable doubt that the defendant transmits a communication <u>*with the intent*</u> to send a threat, <u>*for the purpose*</u> of issuing a threat or <u>*with knowledge*</u> that the communication will be viewed as a threat. <u>Id</u>. See also <u>United States v. Kane</u>, 2020 WL 1660058 at *2 (U.S. Dist. Ct. W.D. Washington, April 3, 2020); Ninth Circuit Model Criminal Jury Instruction 8.47B, Transmitting A Communication Containing a Threat to Kidnap or Injure (approved September, 2015).[1] Accordingly, as to these elements of the crime at issue, the weight of the evidence is weak.

As to the third factor – the history and characteristics of the person – there appears to be no dispute that Defendant has no prior criminal record, has otherwise led a law abiding life, has never failed to appear in court and has a stable residential address and ties to his local community. *See* Exhibit 1 at 30. Per 18 U.S.C. § 3142(g)(3)(B), a court is supposed to give

---

[1] The Court in <u>Elonis</u> declined to decide whether a recklessness *mens rea* would be legally supported. <u>Elonis</u>, 575 U.S. at 2012-2013.

special consideration under this factor to whether at the time of the charged offense the defendant was on probation, parole, or other release for another offense – clearly, not the case here.  Floyd, 11 F. Supp. 2d. at 41.

As to the fourth factor, a defendant may not be detained unless there is "clear and convincing evidence" that a defendant presents a danger to the community. 18 U.S.C. 3142(f)(2)(B).  The Government did not meet this burden.  The Government presented no evidence, for example, that Defendant has a prior history of committing violent acts; has ever taken any actions that showed an intent to follow up on any allegedly threatening or inflammatory communications; or has ever illegally possessed any weapons or shown any intent to use any weapons in a manner to incite violence.  At the detention hearing, the Government noted that Defendant had attended in the past a rally outside the home of Georgia's Governor armed with a rifle.  Exhibit 1 at 22-23.  The Government went on to contend that "the nexus between a machine of violence and his [Defendant's] political beliefs and previously discussed issues in extremely concerning."  Id. at 23.  But, as the Government acknowledged, Georgia is an open carry state, id. at 22-23, and the Government presented no support for its sweeping contention that Defendant legally possessed a weapon that day as part of a "machine of violence" as opposed to, for example, possessing the weapon for self defense in the event that violence erupted at the rally.  In any case, Defendant is willing to abide by a combination of stringent conditions, set forth below, that would reasonably assure the safety of other persons and the community.

Nor does Defendant pose a "risk of flight, given defendant's lack of ties to the community" under § 3142(f)(2)(A), as the Government contended at the detention hearing. Exhibit 1 at 4; Gov't Memo in Support of Pretrial Detention at 6, Docket No. 4. Under §

3142(f)(2)(A), ordinary risk of flight is not a permissible basis for detention; rather, the statute only authorizes detention if there is a "serious risk" that a defendant will flee. *Id.* And the Government bears the burden of proving risk of nonappearance or risk of flight by "a clear preponderance of the evidence." *See* United States v. Karni, 298 F. Supp. 2d 129, 131 (D.D.C. 2004); United States v. Himler, 797 F.2d 156, 160 (3d Cir. 1986) (defendant "may be detained only if the record supports a finding that he presents a serious flight risk."); Motamedi, 767 F.2d at 1406-07; United States v. Townsend, 897 F.2d 989, 994 (9th Cir. 1990). That burden has not been met by the Government. Defendant does not pose any serious risk of flight, as he has no prior convictions and has no history of failing to appear at court proceedings – key considerations. In addition, Defendant is a devoted father to his two sons, ages 15 and 17, and shares ongoing responsibility for their care with his ex-spouse, a responsibility he would not abandon by going into hiding; has maintained a stable residence in North Carolina where he has owned an established business enterprise; and has a stable family structure with deep roots in its local community. Exhibit 1 at 30. Calabrese, 436 F. Supp. 2d at 927 ("Flight is always more likely when a defendant has little or nothing to lose by absconding.") Moreover, Defendant is willing to immediately surrender his passport to the Pretrial Services Agency upon order of the Court. *See* United States v. Cruz, 363 F. Supp. 2d 40, 47 (D.P.R. 2005) (denying the Government's motion to detain a person who frequently traveled internationally, had two passports and other fraudulent documents in his possession, and faced an advisory sentence of 33-41 months imprisonment where the "vast majority of [his] family, economic and social ties are in this jurisdiction" and "the government has presented no concrete evidence to the effect that defendant was fleeing the jurisdiction, or was taking affirmative steps to do so. . . .").

While the Court is to consider each of these four factors listed in 18 U.S.C. § 3142(g), these factors are to be considered only in the context of evaluating the likelihood that the person will fail to appear at future proceedings or will pose a danger.  <u>Motamedi</u>, 767 F.2d at 1408.  Accordingly, even if a defendant is deemed to allegedly pose a danger to others or to the community, the defendant must be released if the Court determines there is a condition or combination of conditions under 18 U.S.C. § 3142(c) that "will reasonably assure ... the safety of any other person and the community."  <u>Kane</u>, 2020 WL 1660058 at *3 (*citing* <u>United States v. Hir</u>, 517 F.3d 1081, 1091-92 (9th Cir. 2008)).

There are various conditions set forth in 18 USC § 3142(c) – including several not proposed or not fully explored at the detention hearing – that would reasonably assure that Defendant, if released, would appear in court as required and that Defendant would not endanger any other person or the community.

<u>First</u>, Defendant's parents, Wendy Meredith and Cleveland Grover Meredith, Sr., have agreed to take third-party custody of Defendant, assume close supervision of Defendant and report promptly to the Court any potential violation of a release condition per 18 USC § 3142(c)(1)(B)(i).  Indeed, both are willing to strictly monitor Defendant and do whatever else may be necessary to ensure his full compliance with any conditions of release imposed by the Court.  Both are willing, as well, to appear before the Court to answer any questions and/or to allow an inspection of their home by the Pretrial Services Agency.  Defendant's parents had not been proposed as third-party custodians at the detention hearing.

Defendant's parents are ideally positioned to ensure that Defendant will appear before the Court as required and will not pose a danger to the safety of any other person or the community while on pretrial release.  Both have occupied responsible positions within their

respective professional careers and have been active in volunteer and other community activities – Mr. Meredith is Chairman of the Board of W.C. Meredith Company, Inc. based in East Point, Georgia, and Ms. Meredith recently retired from running her own interior design firm. They have no firearms in their home. Both are law abiding citizens and have had no contacts with the criminal justice system.

<u>Second</u>, Defendant is willing to strictly abide by any home detention/GPS monitoring that the Court may order and/or to abide by a specified curfew per 18 USC § 3142(c)(1)(B)(vii). In any case, Defendant's parents live on a remote, secluded island in South Carolina where Defendant's movements could be easily monitored. Their home is in a small, gated island community with limited access to the mainland – visitors can only access the island through two gates that are manned 24 hours a day by a private security firm which logs all entries/exits. Defendant would request only that he be allowed to travel to appointments for medical treatment, if such treatment could not be provided via Zoom, or to the District to assist with issues relating to legal representation and/or to attend court proceedings. While GPS monitoring had been referenced in the detention hearing, this specific option of having Defendant reside with his parents in this unique setting was not been addressed.

<u>Third</u>, Defendant would agree to undergo available medical, psychological or psychiatric treatment, and remain in a specified institution if required for that purpose, if so directed by his primary health care provider or mental health care provider per 18 USC § 3142(c)(1)(B)(x), including treatment from a medical professional familiar with cognitive and other therapies for persons who fall prey to adherence to QAnon beliefs. Defendant's willingness to undergo this type of treatment was not discussed at the detention hearing.

<u>Fourth</u>, Defendant would agree to abide by "specified restrictions on personal or group

associations," per 18 USC § 3142(c)(1)(B)(v).  Specifically, Defendant would agree not to knowingly make contact, whether in person, by telephone, via social media or otherwise, with any person or group associated with QAnon; to not access any websites or other areas of the internet associated with QAnon; and to not post directly or indirectly on any social media sites. Defendant's willingness to abide by these restrictions was not discussed at the detention hearing.

Fifth, Defendant would agree, per 18 USC § 3142(c)(1)(B)(viii), to relinquish all firearms, destructive devices or other dangerous weapons within his constructive possession or registered in his name directly to law enforcement officials in Haynesville, NC, his city of residence.  While detained, Defendant has provided a power of attorney for personal matters to an attorney based in Atlanta, Georgia who could arrange for these firearms to be relinquished without direct involvement by Defendant.  Defendant would agree, of course, not to seek or obtain access to any other firearms, destructive devices or other dangerous weapons by any other means.  While this issue was broached at the detention hearing, since then undersigned counsel has taken steps to ensure that this relinquishment of firearms could be done promptly, securely and without any concerns of access by Defendant to such firearms.

Sixth, Defendant would agree to refrain from any use of alcohol or controlled substances without a prescription from a licensed medical provider per 18 USC § 3142(c)(1)(B)(ix).  Per the Government, illicit substances were recovered from the Defendant at the time of his arrest, Exhibit 1 at 23, such that compliance with this restriction would help ensure Defendant's mental stability and his ability to comply fully with all conditions of release.

Seventh, Defendant would agree, per 18 USC § 3142(c)(1)(B)(vi), to report on a regular basis to a designated law enforcement agency, such as the Beaufort County Sheriff's Department (which has jurisdiction over Defendant's parents' place of residence), or to the

Pretrial Services Agency. While this is a standard release condition, in this case arrangements could be made to coordinate closely with the Beaufort County Sheriff's Department to ensure strict compliance.

<u>Eighth</u>, Defendant would agree, per 18 USC § 3142(c)(1)(B)(xiv), to relinquish his passport to the Pretrial Service Agency and, per 18 USC § 3142(c)(1)(A), to not commit any federal state or local crimes while on pretrial release.

Lastly, if need be, Defendant would also agree to execute a bail bond with solvent securities in an appropriate amount as a further step to ensure his appearance at any future proceedings per 18 USC § 3142(c)(1)(B)(xii). In any event, Defendant has been made aware of the severe consequences of any failure to appear at subsequent court dates pursuant to 18 U.S.C. § 3146.

In short, Defendant is fully willing to abide by these new and heightened proposed conditions of release, or such other combination of conditions of release that the Court may order, in order to ensure his appearance at future proceedings and the safety of any other person or the community.

Undersigned counsel sought the position of the Government regarding this Motion. Anthony Franks, the assigned AUSA, has communicated that the Government does not consent to this Motion.

**WHEREFORE**, Defendant Cleveland Grover Meredith, Jr. respectfully requests that the Court revoke the Magistrate Judge's Order of January 14, 2021 (Docket No. 10), ordering the pretrial detention of Defendant, and set such conditions of release as will ensure his appearance at future proceedings and the safety of any other person and the community. A

proposed Order is attached. Pursuant to LCrR 47(f), Defendant requests a hearing on this Motion.

                                                Respectfully submitted,

                                                KIYONAGA & SOLTIS, P.C.

                                                /s/ Paul Kiyonaga
                                                _____
                                                Paul Y. Kiyonaga
                                                D.C. Bar 428624
                                                Debra Soltis
                                                D.C. Bar 435715
                                                Marcus Massey
                                                D.C. Bar 1012426
                                                1827 Jefferson Place, NW
                                                Washington, D.C. 20036
                                                (202) 363-2776
                                                pkiyonaga@kiyosol.com

March 15, 2021                                       *Counsel for Defendant*

## CERTIFICATE OF SERVICE

     I hereby certify that on this 15th day of March, 2021, a true and correct copy of the foregoing Defendant's Motion to Revoke Magistrate's Order of Detention Pending Trial and to Set Conditions of Release was served via the ECF system on the on the following attorneys for the Government:

                AUSA Anthony L. Franks
                DOJ-USAO
                111 S. 10th Street Rm. 20.
                St. Louis, MO 63102
                Email: anthony.franks@usdoj.gov

                AUSA Brandon K. Regan
                DOJ-USAO
                Federal Major Crimes
                555 4th St NW
                Washington, DC 20530
                Email: brandon.regan@usdoj.gov

                                  /s/ Paul Y. Kiyonaga
                                  _____
                                  Paul Y. Kiyonaga

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | Crim. No. 1:21-cr-00159 (ABJ) |
| ) | |
| CLEVELAND GROVER ) | |
| MEREDITH, JR.    ) | |
| ) | |
| Defendant ) | |
| _____) | |

## PROPOSED ORDER

Upon consideration of Defendant's Motion to Revoke Magistrate Judge's Order of Detention Pending Trial and to Set Conditions of Release and any responses thereto, it is this ____ day of 2021, hereby

**ORDERED** that Defendant's Motion to Revoke Magistrate's Order of Detention Pending Trial and to Set Conditions of Release is **GRANTED,** and it is further

**ORDERED** that Defendant shall be released pending trial on the conditions set forth in such Motion.

_____
The Honorable Amy Berman Jackson
United States District Judge

Copies to:

Paul Y. Kiyonaga
D.C. Bar 428624
1827 Jefferson Place, NW
Washington, D.C. 20036
Email: pkiyonaga@kiyosol.com

AUSA Anthony L. Franks
DOJ-USAO
111 S. 10th Street Rm. 20.

St. Louis, MO 63102
Email: anthony.franks@usdoj.gov

AUSA Brandon K. Regan
DOJ-USAO
Federal Major Crimes
555 4th St., NW
Washington, D.C. 20530
Email: brandon.regan@usdoj.gov